**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hill-Rom Services Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Convergence Systems Limited, et al.,<br><br>Defendants. | No. CV-19-02223-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants Convergence Systems Limited, et al.'s ("Convergence") and Jerry Garrett's ("Garrett") individual Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), (Doc. 14, 15). Also pending before the Court are Plaintiff Hill-Rom Services Inc.'s ("Plaintiff") Motion for Jurisdictional Discovery (Doc. 18) and Motion for Protective Order (Doc. 28). For the following reasons, Convergence's Motion to Dismiss is denied and Garrett's Motion to Dismiss is granted. Plaintiff's Motion for Jurisdictional Discovery is denied as moot. Defendants shall notify the Court within 14 days if they continue to object to Plaintiff's Motion for Protective Order.[1]

## BACKGROUND

Plaintiff, an Indiana corporation, brings this action against Convergence and Garrett for, *inter alia*, the theft of its trade secrets and breach of an implied in fact contract. Convergence is organized under the laws of the Hong Kong Special Administrative Region

---
[1] The request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. See *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

and maintains its headquarters there. Garrett, a member of Convergence, is a citizen of the Hong Kong Special Administrative Region.

Plaintiff is a health company that provides a range of patient care solutions. To assist healthcare personnel with the detection of incontinence events in hospital beds, Plaintiff began developing moisture detection systems that would detect and signal the presence of incontinence events to healthcare personnel (the "Project"). Convergence, which specializes in the design of radio frequency identification ("RFID"), was part of the design group on the Project. Convergence became involved in the Project through its relationship with Helvetia Wireless, LCC ("Helvetia"), a non-party to this action.

Helvetia is a Delaware limited liability company with its principal place of business in Arizona. Helvetia sought Convergence's assistance integrating Convergence's RFID antennas and readers with Helvetia's moisture sensor system to help prepare a prototype sensor pad that could be shown, and possibly sold, to Plaintiff. As part of this collaboration, Convergence and Helvetia executed a Mutual Non-Disclosure Agreement ("NDA"). The NDA provides that "[a]ll Confidential Information shall remain the property of the discloser." (Doc. 14-1 at 3.) (alterations in original). The NDA also contains an Arizona choice of law clause and a provision designating Arizona as the venue where disputes arising out of the NDA will be arbitrated. The location where the NDA was executed is not alleged. Plaintiff asserts that by entering into the NDA Convergence "agreed to treat and hold all Project information disclosed to it in strict confidence." (Doc. 1 at 8.) Plaintiff further asserts that Convergence entered into the NDA "for the benefit of [Plaintiff]." (Doc. 1 at 9.) It is undisputed, however, that Plaintiff was not a signatory to the NDA.

Throughout the course of the Project, Convergence made eight Project related shipments of Convergence products to Helvetia's Arizona office and engaged in frequent communications with Helvetia and other project personnel. In February 2014, at the request of Helvetia, Garrett, on behalf of Convergence, attended a Project meeting at Helvetia's Arizona office. Garrett gave a single presentation at the meeting regarding Convergence's products. According to Plaintiff, the Arizona meeting also included discussions, review,

and testing of the incontinence detection solution proposed to Plaintiff at that time. Plaintiff also claims that during his time in Arizona, Garrett was privy to discussions regarding certain of Plaintiffs trade secrets. (Doc. 19-1 at 5.) Plaintiff contends that it made a presentation to the meeting attendees, including Garrett, explaining that the Project was confidential to Plaintiff and that all information, designs, and intellectual property generated from the Project were owned by Plaintiff.

Sometime after Convergence's involvement in the Project ceased, Convergence filed for and was issued United States Patent No. 10,134,489 (the "Patent"). Garrett is named as an Inventor on the Patent, but Convergence is the named assignee. Plaintiff claims that the Patent improperly uses and discloses Plaintiff's trade secrets that Convergence and Garrett learned at the Arizona meeting. As a result, Plaintiff brought this action alleging, *inter alia*, misappropriation of trade secrets and breach of an implied in fact contract to maintain the confidentiality of any information disclosed during the Project. Convergence and Garrett move, in separate motions, to dismiss the Complaint in full for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Rule 12(b)(3). (Doc. 14, 15.) Plaintiff responded in opposition to Defendants' motions arguing that Defendants are subject to personal jurisdiction pursuant to Rule 4(k)(1), or in the alternative Rule 4(k)(2). In a separate paper, Plaintiff requested the Court to issue an order granting 90 days for Plaintiff to conduct jurisdictional discovery. (Doc 18.)

**DISCUSSION**

**I.     Motions to Dismiss for Lack of Personal Jurisdiction**

    **A.     Legal Standard**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, the motion to dismiss a complaint for lack of personal jurisdiction "is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie

showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

When determining the sufficiency of a prima facie showing, "[t]he court may consider evidence presented in affidavits." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The court must assume as true all uncontroverted facts in the complaint and must interpret all evidentiary disputes in the plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800. However, "the plaintiff cannot simply rest on the bare allegations of its complaint" if controverted by evidence incorporated into the defendant's motion. *Id.* (internal quotation omitted); *see also Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."). All evidence must be admissible to be considered. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 923 (D. Ariz. 2003).

### B. Personal Jurisdiction

A federal court sitting in diversity "applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Arizona long arm statute is co-extensive with the limits of federal due process. *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987)); *see also* Ariz. R. Civ. P. 4.2(a). "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe*, 112 F.3d at 1050 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general and specific. *See Daimler AG v. Bauman*, 571 U.S 117, 126–27 (2014). Plaintiff does not argue that Convergence or Garrett is subject to general personal jurisdiction in Arizona; thus, only specific personal jurisdiction need be considered.

### 1. Convergence

Convergence has sufficient minimum contacts with Arizona to be subject to specific personal jurisdiction in the state. "There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Plaintiff bears the burden of establishing the first two prongs of the test. *Id.* If Plaintiff succeeds, the defendant must show that exercising jurisdiction over it would be unreasonable. *Id.* at 1069.

#### a. Purposeful Availment/Direction

The first prong of the specific jurisdiction test is divided into two concepts: "purposeful direction" and "purposeful availment." *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Purposeful direction is typically used in tort actions, while purposeful availment is typically used in contract actions. *Id.* Although Plaintiff alleges claims that sound in both tort and contract, it may establish jurisdiction for all claims under either test. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists.").

Purposeful direction requires the defendant to "(1) commit[] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc.*, 303 F.3d at 1111. Plaintiff does not argue that Convergence expressly aimed any conduct at Arizona, or that it was foreseeable that Plaintiff would suffer any harm in Arizona. Instead, Plaintiff focuses on Convergence's contacts with Arizona. In this regard, the purposeful availment analysis is

more appropriate.

Purposeful availment requires the defendant to "purposefully avail[] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The purposeful availment analysis is satisfied when the defendant deliberately engages in significant activities within the forum or has created continuing obligations between itself and the forum's residents. *Burger King*, 471 U.S. 462, 476 (1985). "A defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Picot*, 780 F.3d at 1212 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). A contract with a forum resident does not automatically establish the requisite minimum contacts. *Id.* The court must consider the circumstances surrounding the contract, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 479).

Plaintiff asserts that its claims arise out of Convergence's breach of the NDA in which it apparently claims status as a third-party beneficiary.[2] The NDA provides that any dispute would be governed by Arizona law, and designates Arizona as the venue where disputes arising out of the NDA would be arbitrated. Convergence correctly asserts that a choice of law clause, standing alone, is not sufficient to confer jurisdiction. *Burger King*, 471. U.S. at 482. However, the choice of law and venue provisions are relevant factors. *Id.* (finding that a forum choice of law provision combined with the defendant's continuous relationship with a forum resident reinforced the defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.")

---

[2] Plaintiff alleges in the Complaint that "by entering into the [NDA] . . . Convergence agreed to treat and hold all Project information disclosed to it in strict confidence." (Doc. 1 at 8.) Jerry Garrett's affidavit, submitted in support of Convergence's motion, states that the NDA "does not mention [Plaintiff] or any purported intellectual property rights of [Plaintiff]," but rather provides that "[a]ll Confidential Information shall remain the property of the Discloser." (Doc 14-1 at 3.) Garrett further proclaims that the NDA was executed to "cover numerous projects where Helvetia wanted to use Convergence's commercially available RFID products." *Id.* The Project at issue was one of those projects. Garrett's affidavit does not directly contradict Plaintiff's claim that the NDA covered Project information. Thus, Plaintiff's allegation is assumed true.

In addition to the terms of the NDA, Convergence's alleged course of performance is also relevant. Plaintiff asserts that Convergence engaged in frequent communications with Helvetia over the course of the Project, made several Project related shipments to Helvetia's Arizona office, and attended the Arizona meeting where Plaintiff's confidential information was allegedly shared.

Convergence first relies on *Toop, LLC v. USK Int'l, Inc.* for the proposition that phone calls into the forum, even coupled with a single shipment into the forum, do not constitute purposeful availment. CIV 10-1498-PHX-DKD, 2011 WL 13220338 (D. Ariz. Mar. 4, 2011). In *Toop*, the plaintiff, an Arizona limited liability company, entered into a contract with a California corporation for a single sale of soccer balls. *Id.* at *1. The soccer balls were shipped into Arizona. *Id.* The court declined to extend personal jurisdiction over the defendant for the plaintiff's breach of contract action because the contract did not create "continuing obligations" with the residents of Arizona. *Id.* at *3. Here, Convergence's relationship with Helvetia and Plaintiff extends beyond a once in time transaction. Convergence agreed to design and develop software for the Project. Because of Convergence's agreement with Helvetia it sent a series of shipments to Arizona and consistently communicated with Helvetia and other parties to the Project. This type of ongoing relationship necessarily entails "continuous obligations"—the element missing in *Toop*. Convergence cannot classify its involvement in the Project as a once in time transaction.

Convergence similarly relies on *Picot v. Weston*, for the proposition that physical entry into the forum does not necessarily satisfy the constitutional minimum contacts requirement. 780 F.3d 1206 (9th Cir. 2015). In *Picot*, the parties entered into an oral agreement that called for the defendant to develop technology, arrange for its testing, and assist in marketing. *Id.* at 1212. The agreement was formed outside of the forum and it was understood that the majority of the defendant's performance under the contract would also take place outside of the forum. *Id.* The defendant did travel to the forum on two occasions as part of "broader efforts to develop and market the technology." *Id* at 1213. However,

the Court declined to exercise specific personal jurisdiction over the defendant because his two trips to the forum held "no special place in his performance under the agreement as a whole." *Id.* Here, Convergence's visit to Arizona was more than a stop on a marketing campaign. The visit included discussions about Plaintiff's requirements for the prototype Convergence was helping design. The Arizona visit, as pled by Plaintiff, was a "very important" aspect of the overall Project. (Doc. 19-1 at 5.)

The Court acknowledges that any one contact, on its own, may not constitute the requisite minimum contacts. However, the minimum contacts analysis considers Convergence's Arizona contacts in their totality. *Burger King*, 471 U.S. at 476. In summary, Convergence allegedly entered into a contract with an Arizona resident to work on confidential projects for the Plaintiff. The Contract specified Arizona to be the venue of and to provide the governing law for any future disputes regarding that confidentiality obligation. Defendant engaged in an ongoing relationship with an Arizona based entity and attended an alleged meeting in the state in which confidential information, allegedly appropriated by Defendant, was allegedly shared with the Defendant. When these contacts are considered together, they are sufficient to establish the first prong of the specific jurisdiction test.

### b. "Arising Out Of"

"The second prong of the specific jurisdiction test is met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen. *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (citation omitted).

The Complaint asserts—and the Court must assume—that but for Convergence's involvement with the Project through Helvetia and attendance at the Arizona meeting, Convergence would not have obtained the proprietary information wrongfully disclosed. Plaintiff's claims "arise out of Convergence's entry into and breach of the [NDA]." (Doc. 1 at 9.) Convergence focuses its objection to personal jurisdiction on the first prong of the test and does not dispute that Plaintiff's claims arise out of Convergence's contacts with Arizona. Plaintiff has met its burden on the second prong of the specific jurisdiction test.

**c.     Reasonableness**

"Even where sufficient minimum contacts are demonstrated, an exercise of personal jurisdiction is constitutional only if it reasonable." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1091 (C.D. Cal. 2003) (citing *Burger King*, 471 U.S. at 476–78). However, the exercise of personal jurisdiction is presumed reasonable where the first two requirements of the specific jurisdiction test are met. *Chandler v. Roy*, 985 F. Supp. 1205, 1212 (D. Ariz. 1997) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). When the presumption applies, the defendant "must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). Convergence does not argue this point, but the Court must nevertheless consider it. *See In re Cathode Ray Tube (CRT)*, CV 07–5944–SC, 2014 WL 2581525, at *8 (N.D. Cal. June 9, 2014) (noting that the court must consider the reasonableness requirement even when the defendant does not argue jurisdiction would be unreasonable). This Circuit considers seven factors to determine the reasonableness of exercising personal jurisdiction over a non-resident defendant:

(1) the extent of the defendant's purposeful interjection into the forum state;

(2) the burden on the defendant in defending in the forum;

(3) the extent of the conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Terracom*, 49 F.3d at 561. All factors must be weighed, but none are dispositive. *Id.*

Purposeful interjection: As discussed above, the extent of Convergence's purposeful interjection into Arizona was substantial. This factor weighs in favor of jurisdiction being reasonable. *See High Purity D.R.A.W., Inc. v. Sanveo, Inc.*, 2:17-cv-1784-HRH, 2017 WL 4652203, at *6 (D. Ariz. Oct. 17, 2017) (finding that where the defendant purposefully

availed itself of the forum, the purposeful interjection factor weighed in favor of jurisdiction in the forum being reasonable).

<u>Burden on Defendant</u>: The Court is sensitive to the considerable burden placed on a defendant forced to litigate in a foreign country under foreign law. However, "modern advances in communications and transportation have significantly reduced the burden of litigating in a foreign country." *Sinatra v. National Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988). "Moreover, this factor is less salient when the defendant speaks English and has traveled to the forum on business related to the instant action." *Metro-Goldwyn-Mayer Studios*, 243 F. Supp. 2d at 1093.

Additionally, for this factor to weigh against reasonableness, the "litigation must be so gravely difficult that it puts the defendant at a severe disadvantage in comparison to his opponent." *Russo v. Manheim Remarketing, Inc*., CV 11–393–PHX–JAT, 2012 WL 2191649, at *11 (D. Ariz. June 14, 2012). Because Plaintiff is not an Arizona citizen, it would face similar burdens that accompany litigating away from home. While Arizona may not be Convergence's preferred forum, the burden to defend the action in Arizona is not so great as to constitute deprivation of due process. This factor weighs in favor of finding jurisdiction reasonable.

<u>Conflict with Defendant's Sovereignty</u>: The Court is cautious to extend "our notions of personal jurisdiction into the international field." *Metro-Goldwyn-Mayer Studios*, 243 F. Supp. 2d at 1093. However, this factor cannot be dispositive, or it would always prevent suit against a foreign national in the United States. *Id.* It should also be noted that Convergence has not produced any evidence suggesting that a conflict exists. This factor weighs in Convergence's favor, but only slightly. *See In re Cathode Ray Tube (CRT)*, 2014 WL 2581525, at *8 (noting that the exercise of specific jurisdiction, rather than general jurisdiction, mitigates the concern of international comity).

<u>Arizona's Interest</u>: Arizona has a limited interest in adjudicating this dispute where neither party is an Arizona citizen. However, Plaintiff is a United States citizen that claims it was harmed by Convergence's application for a United States Patent. Thus, United States

federal courts have an interest in hearing this case. *See In re Cathode Ray Tube (CRT)*, 2014 WL 2581525, at *9 (explaining that federal courts have an interest in hearing a case where plaintiffs were United States citizens who alleged they were harmed by foreign defendants' activities in the United States). This factor is neutral.

<u>Efficiency</u>: Arizona may not be the most efficient forum if much of the evidence is located elsewhere. *See Metro-Goldwyn-Mayer Studios*, 243 F. Supp. 2d at 1093 ("In determining the efficiency of the forum, the Court looks primarily at where the evidence and witnesses are likely to be located."). However, Convergence has not indicated where the majority of the evidence is located. Helvetia's relationship with Convergence is a significant component of Plaintiff's claims, and Helvetia is located in Arizona. Thus, at least to the extent that materials in the possession of Helvetia will be evidence in the suit, Arizona is not an unreasonable forum. Based on the information provided, this factor is either neutral or slightly favors jurisdiction.

<u>Importance of Forum to Plaintiff's Interest in Effective Relief</u>: The importance of the forum to Plaintiff's interest in convenience and effective relief is significant. Plaintiff has already tried to bring suit against Convergence in Plaintiff's home state of Indiana, but the case was dismissed for lack of personal jurisdiction. (*Hill-Rom Services, Inc. v. Tellisense Medical, LLC, et al.*, 1:17-cv-4725-WTL-MJD, Doc. 130) If Plaintiff is unable to litigate this action in Arizona, it may be unable to litigate this action anywhere in the United States. This factor weighs in favor of finding jurisdiction in Arizona reasonable.

<u>Existence of Alternative Forum</u>: Plaintiff bears the burden of proving that an alternative forum is not available. *See Metro-Goldwyn-Mayer Studios*, 243 F. Supp. 2d at 1094. Hong Kong might be an alternative forum for this action. However, this factor is significant only if other factors weigh against an exercise of jurisdiction. *Id.* (citing *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir.1987)).

The Court concludes that Convergence has failed to meet its heavy burden to overcome the presumption of reasonableness. Convergence is subject to specific personal

jurisdiction in Arizona.[3]

## 2. Garrett

The Court must also determine whether Garrett may be independently subject to specific personal jurisdiction with respect to Plaintiff's claims. Typically, "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." *Forsythe v. Overmyer*, 576 F.2d 779, 783–84 (9th Cir. 1978). However, "a court can assert jurisdiction over officers and employees if jurisdiction is supported by the long-arm statute of the forum state." *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 859 (D. Ariz. 1999). Because Arizona's long arm statute is coextensive with due process, personal jurisdiction over corporate officers is appropriate so long as the officer has sufficient minimum contacts with Arizona. *Id.* Because Plaintiff only asserts tort claims against Garrett,[4] the purposeful direction test applies.

Purposeful direction requires the defendant to "(1) commit[] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc.*, 303 F.3d at 1111. Plaintiff, however, does not argue that Garrett expressly aimed any conduct at Arizona, or that it was foreseeable that Plaintiff would suffer any harm in Arizona. Instead, Plaintiff argues that Garrett cannot evade jurisdiction by hiding behind a corporate shield because "he inserted himself into the case by misappropriating Hill-Rom's proprietary information." (Doc. 19 at 13.) Plaintiff's argument is unavailing. Because Plaintiff has not alleged facts necessary for the Court to find that Garret purposefully directed his activities to Arizona, the Court grants Garrett's Motion to Dismiss for lack of personal jurisdiction. Plaintiff will have 30 days from the date of this order to amend its complaint.

---

[3] Because the Court finds that jurisdiction is proper under Rule 4(k)(1), the Court need not consider whether jurisdiction would be proper under Rule 4(k)(2).
[4] Plaintiff's claims against Garrett include (1) Misappropriation of Trade Secretes Under the Defend Trade Secrets Act; (2) Misappropriation of Trade Secrets Under the Arizona Uniform Trade Secrets Act; (3) Misappropriation of Confidential Information; (4) Unfair Competition; (5) Unjust Enrichment; (6) Conversion.

- 12 -

## II. Motions to Dismiss for Improper Venue

Because the Court finds that Convergence is subject to jurisdiction in Arizona, venue is also proper in Arizona. *See* 28 U.S.C. § 1391(b) ("A civil action may be brought in . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."); *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. W. Dist. Tex.*, 571 U.S. 49, 56–57 (2013) (28 U.S.C. § 1391(b) "ensures that so long as a federal court has personal jurisdiction over the defendant, venue will always lie") Convergence Motion to Dismiss for Improper Venue is denied.

Because the Court grants Garrett's Motion to Dismiss for lack of personal jurisdiction, Garrett's Motion to Dismiss for Improper Venue is moot.

## III. Motion for Jurisdictional Discovery

Plaintiff's motion for jurisdictional discovery is moot in light of the Court's conclusion that Defendant Convergence is subject to personal jurisdiction in Arizona.

## IV. Motion for Protective Order

Plaintiff has also moved in this action for a protective order pursuant to Rule 26(c). In response to Plaintiff's motion, Defendants stated "[s]hould the Court grant Hill-Rom's Motion for Jurisdictional Discovery or deny Defendants' Motions to Dismiss Defendants certainly will comply with the court's schedule to meet and confer on an appropriate protective order." (Doc. 29 at 2.) To the extent Defendants still oppose Plaintiff's request for a protective order in this action, they must notify the Court and articulate the basis of their opposition within **14 days** of the date of this order.

## CONCLUSION

In light of Convergence's contacts with Arizona, it will not offend traditional notions of fair play and substantial justice for Convergence to be forced to litigate in Arizona. Convergence is subject to specific personal jurisdiction in this Court, and its Motion to Dismiss for Lack of Jurisdiction and Improper Venue is denied. As a result of this holding, Plaintiff's Motion for Jurisdictional Discovery is dismissed as moot.

Garrett's only contacts with Arizona were in his capacity as a corporate officer of Convergence, and as a result he is not subject to personal jurisdiction in Arizona. Garrett's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is granted.

**IT IS HEREBY ORDERED** that Defendant Convergence Systems Limited, et al.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (Doc. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Jerry Garret's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (Doc. 15) is **GRANTED** with leave to amend. Plaintiff may file an amended complaint, if it wishes to do so, within **30 days** from the date of this order.

**IT IS FURTHER ORDERED** that Plaintiff Hill-Rom Services Inc.'s Motion for Jurisdictional Discovery (Doc. 18) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant(s) must notify the Court within **14 days** of the date of this order of any remaining objection to Plaintiff's request for a protective order (Doc. 28) in this action.

Dated this 31st day of October, 2019.

_G. Murray Snow_
Chief United States District Judge